IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LORENZO McCORKLE, )
)
        Petitioner, )
)
vs. ) Civil No. 17-cv-476-JPG-CJP
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
        Respondent. )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Lorenzo McCorkle, represented by counsel, seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. §§ 1382 and 1382c *et seq.*

## Procedural History

Mr. McCorkle applied for benefits in December 2012 alleging disability beginning in January 2011. After holding an evidentiary hearing, Administrative Law Judge (ALJ) Lisa Leslie denied the application on September 14, 2015. (Tr. 18-29.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision subject to judicial review. (Tr. 1.)

Administrative remedies have been exhausted, and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ gave great weight to the opinions of state agency medical consultants but ignored parts of those opinions that were not consistent with the ultimate mental residual functional capacity (RFC) assessment.

2. The ALJ ignored the claimant's request for the prior file. Said file was requested

because the claimant was previously approved for benefits based on mental retardation, and said benefits were terminated for incarceration rather than medical improvement.[1]

### **Applicable Legal Standards**

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines "disabled" as "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 1382c(a)(3)(D). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 416.972.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 416.920(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but that the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the

---

[1] Effective September 3, 2013, the phrase "intellectual disability" was substituted for the phrase "mental retardation" in the Listings. This was not a substantive change in the requirements of the relevant Listings. This change is consistent with the terminology used in the DSM-5. *See* 78 Fed. Reg. 46499-01, 2013 WL 3936340 (Aug. 1, 2013). The Court uses the current terminology in this order.

burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## The Decision of the ALJ

ALJ Leslie followed the five-step analytical framework described above. She determined that plaintiff had not worked since the alleged onset date.

The ALJ found that plaintiff had severe impairments of intellectual disability, cervical spondylosis, degenerative disc disease, right shoulder osteoarthritis and rotator cuff impingement, asthma, anxiety disorder, depressive disorder, and personality disorder with

3

antisocial features.

The ALJ found that Mr. McCorkle had the RFC to perform work at the light exertional level with some physical and mental limitations. Based upon the testimony of a vocational expert (VE), the ALJ found that plaintiff was not capable of performing his past work as a dishwasher. He was not disabled because he was capable of performing other jobs that exist in significant numbers in the national economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period. As plaintiff addresses only his mental limitations, a discussion of the medical evidence related to his physical condition is unnecessary.

**1.     Agency Forms**

Plaintiff was born in 1975 and was 39 years old on the date of the ALJ's decision. A prior claim for disability benefits had been granted, but his benefits had been terminated in September 2012. (Tr. 200.) He had a seventh grade education. (Tr. 213.)

A Disability Determination Explanation Form from July 2013 indicates that plaintiff had gotten out of prison in December 2012. It states that he was "previously allowed under 3180 (MR), but the FO has advised that they cannot obtain the folder." (Tr. 63.)

**2.     Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in July 2015. (Tr. 36.)

The ALJ listed the exhibits in the record and asked plaintiff's attorney whether there were any additional documents that needed to be admitted. He said there were not. (Tr. 37.)

Plaintiff testified that he lived with his girlfriend and their sons. He last worked in 2001.

(Tr. 40-41.) He was a dishwasher. (Tr. 51.)

Plaintiff said he had received disability benefits in the past, but those payments stopped when he was incarcerated in 2009. He dropped out of school in the seventh grade. He did not get a GED. His mother had requested that he be placed in special education classes, but the request was refused. He read at a second or third grade level. He could add and subtract "a little bit." He was released from prison in December 2012. (Tr. 41-43.)

Plaintiff said he was disabled because he had a learning disability and he had neck and back injuries. (Tr. 43.)

He had a driver's license but it expired while he was in prison. Someone had to read the questions on the test to him. (Tr. 48.)

A VE also testified. The ALJ asked the VE a hypothetical question that corresponded to the ultimate RFC findings. The VE testified that this person could not do plaintiff's past job as a dishwasher. He could do other jobs such as dining and cafeteria attendant, retail worker, and janitor. (Tr. 51-53.)

Upon questioning by plaintiff's counsel, the VE confirmed that a person who was limited to only occasional interaction with the public would be able to do the jobs of retail worker and dining and cafeteria helper. (Tr. 57)

### 3. Medical Records

The transcript contains medical records from the Missouri Department of Corrections from December 2011 to October 2012. (Tr. 353-413.) In May 2012, plaintiff was seen by a mental healthcare provider there. It was noted that he had "received disability income since he was a child for learning disability." An IQ test in 2009 showed a full scale IQ of 64. (Tr. 411.)

In May 2013, Harry J. Deppe, Ph.D., performed a consultative psychological examination

at the request of the agency. Dr. Deppe noted that plaintiff "does appear to be functioning at a below average level of intellectual ability; however, does not appear to be mentally retarded." (Tr. 415.) On exam, he had no difficulty staying focused. His answers were brief, but were coherent and relevant. His fund of general knowledge was good. His abstract reasoning skills were within normal limits. His ability to perform simple calculations was fair. Dr. Deppe concluded that plaintiff had intact ability to relate to others, including coworkers and supervisors. He had fair to good ability to understand and follow simple instructions, ability to maintain attention required to perform simple tasks, and ability to withstand the stress and pressure of day-to-day work. His ability to complete tasks in a "timely and efficient fashion" was questionable. Dr. Deppe diagnosed mild mental retardation, by previous testing, and personality disorder with antisocial features. He noted that plaintiff may have difficulty managing his own funds. (Tr. 414-17.)

   4.   **State Agency Consultants' Review**

In July 2013, a state agency psychological consultant assessed plaintiff's mental RFC based on a review of the file contents. Among other limitations, he concluded that plaintiff was moderately limited in ability to interact appropriately with the general public and in ability to get along with coworkers and peers. He recommended that plaintiff be limited to work tasks that do not require interaction with the general public. (Tr. 68-71.)

A second consultant agreed with these conclusions in January 2014. (Tr. 84-87.)

## Analysis

Turning first to plaintiff's second point, the Court agrees that the ALJ erred in not at least attempting to obtain the documents relating to his prior, successful, application for benefits.

In March 2015, plaintiff's attorney submitted a written request that the prior file on the

successful application be made part of the record. Counsel stated that plaintiff had informed him that he had received benefits from 2001 through 2011. Benefits were terminated because of his incarceration, not because of medical improvement. (Tr. 264.)[2] The transcript does not contain a response from the ALJ to that request, and the matter was not addressed at the hearing.

The ALJ does not refer at all in her decision to the fact that plaintiff had previously been approved for benefits. The scant information on this subject in the record indicates that he was approved on the basis of MR, *i.e.*, "mental retardation," which is now referred to as "intellectual disability." A report dated December 2012 contained the cryptic statement that plaintiff was "previously allowed under 3180 (MR), but the FO has advised that they cannot obtain the folder." (Tr. 63.) There is no indication of what effort, if any, the ALJ made to get the documents relating to the prior approval.

It is true, as the Commissioner points out, that plaintiff's counsel did not renew his request at the hearing. The Court cannot accept the Commissioner's argument that plaintiff thereby abandoned his request. Counsel requested the prior records in writing several months before the hearing. The argument advanced by the Commissioner would mean that written requests submitted to the ALJ are meaningless and can be ignored by the ALJ.

The Commissioner also argues that plaintiff cannot demonstrate that he meets a Listing on the basis of his intellectual disability. The only IQ test result in the record is 64. With that IQ, he might meet the requirements of Listing 12.05C, which are:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

---

[2] Transcript pages 198-266 were filed as a supplemental transcript at Doc. 13.

7

* * *

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05. (2015).

The Commissioner points out that the ALJ determined that plaintiff does not meet the requirements of Listing 12.05C because the record does not demonstrate that he had deficits in adaptive functioning before the age of 22. The ALJ did make that finding. (Tr. 23.) However, there is a statement in the Missouri Department of Corrections records that plaintiff received SSI benefits as a child because of a learning disability. (Tr. 411.) The ALJ did not mention that statement. If that information is correct, it certainly is relevant to whether plaintiff meets Listing 12.05C.

This is not to suggest that plaintiff is entitled to benefits now simply because he was determined to be disabled in the past or that he is entitled to benefits if the agency cannot locate the records related to his past successful application. However, in view of the apparent relevance of the prior records, the ALJ erred in apparently ignoring plaintiff's request that the prior records be located and considered on his current application.

Plaintiff's first point is that, although the ALJ gave "great weight" to the opinions of the state agency consultants, she did not adopt their conclusion that he was limited to tasks that do not require interaction with the general public. Rather, she limited him to occasional interaction with co-workers and the public. The agency defines occasionally as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, *5 (Jan. 1, 1983).

The ALJ discussed the opinions of Dr. Deppe and of the state agency consultants at Tr. 27. She said she gave Dr. Deppe's opinion great weight, but she also said that she rejected his

conclusion that plaintiff had intact ability to interact with others because Dr. Deppe "did not adequately consider the claimant's subjective reports of problems being around others." The ALJ said that she gave great weight to the state agency consultants' opinions and did not say that she rejected any part of the opinions. She specifically noted that the state agency consultants "adequately considered" plaintiff's "reports of problems getting along with and being around others."

The Commissioner argues that the ALJ was not required to adopt the consultants' opinions in full simply because she gave them "great weight." In principle, that is true; the meaning of "great weight" is somewhat murky, but there is no requirement that the ALJ adopt any one medical opinion in full. For instance, the ALJ here gave great weight to Dr. Deppe's opinion in general but specifically rejected his opinion about ability to interact with others. The problem here is not that the ALJ rejected part of the consultants' opinions. The problem is that the ALJ obviously accepted the state agency consultants' opinion that plaintiff has some limitations in his ability to interact with the public, but, without explanation, she limited him to occasional interaction with the public rather than no interaction as they recommended.

The Commissioner also argues that there is no conflict because the state agency consultants limited plaintiff to tasks that do not *require* interaction with the general public, and the RFC does not *require* plaintiff to interact with the public. According to the Commissioner, "There is an important difference between requiring interaction and allowing for the possibility of the same" (Doc. 22 at 5). She does not explain the nature of that "important difference." If a person is unable to interact appropriately with the public, whether the job requires occasional interaction or whether occasional interaction occurs incidentally would not likely make much difference.

The Commissioner also argues that plaintiff has failed to demonstrate that the limitation to occasional rather than no interaction with the public was harmful because the VE clarified that the jobs of dining and cafeteria room attendant and retail worker do not require direct interaction with customers. The VE testified that the dining and cafeteria room attendant is "generally at a table after the customers have left or before they come, so they're not interacting directing with customers." The retail store worker job is "stocking of light items and cleaning maybe in the store." (Tr. 57.)

According to the *Dictionary of Occupational Titles*, a dining and cafeteria room attendant:

> Carries trays from food counters to tables for cafeteria patrons. Carries dirty dishes to kitchen. Wipes tables and seats with dampened cloth. Sets tables with clean linens, sugar bowls, and condiments. May wrap clean silver in napkins. May circulate among diners and serve coffee and be designated Coffee Server, Cafeteria Or Restaurant (hotel & rest.).

DOT 311.677-010, 1991 WL 672694 (1991).

A "retail store worker":

> Performs any combination of following duties to provide customer service in self-service store: Aids customers in locating merchandise. Answers questions from and provides information to customer about merchandise for sale. Obtains merchandise from stockroom when merchandise is not on floor. Arranges stock on shelves or racks in sales area. Directs or escorts customer to fitting or dressing rooms or to cashier. Keeps merchandise in order. Marks or tickets merchandise. Inventories stock.

DOT 299.677-010, 1991 WL 672643 (1991).

The above job descriptions do not support the Commissioner's suggestion that they could be performed by a person who is limited to having no interaction with the public.

Because of the ALJ's errors, this case must be remanded to the Commissioner for rehearing. The Court wishes to stress that this Memorandum and Order should not be construed

10

as an indication that the Court believes that plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Lorenzo McCorkle's application for SSI benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**
**DATED: March 12, 2018**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**